Freedman, J.
This is an action to redeem certain mortgaged premises.
On September 9, 1854, one Thomas Reilly confessed judgment in favor of Theodore T. Edgerton and Sibra Britton for the sum of thirteen hundred and sixteen dob lars and seventy-one cents, and upon said confession judgment was on said day entered against said Thomas Reilly in the supreme court, and docketed against him in the office of the clerk of the city and county of New York.
On or about the eighth day of June, 1857, the said Thomas Reilly acquired by deed the fee of the premises mentioned and described in the complaint in this action. At the time of receiving said deed, and for the purpose of securing the payment of a portion of the purchase money, he executed and delivered to Mary Ann Dodin a mortgage upon said premises, conditioned for the payment of the sum of twenty-five hundred dollars, with interest, and also executed and delivered to Owen Davey, Patrick C. Davey, John Davey and John Callahan, four several mortgages for different amounts upon the same premises, which were of equal lien and priority with the mortgage held by Mary Ann Dodin. By force of the statute these five mortgages were liens prior to the lien of the judgment docketed in favor of Edgerton and Brit-ton. The mortgage of Mary Ann Dodin was foreclosed during the year 1858 by an action brought for that pur *204 pose. The referee appointed in said action found that at the date of his report the following sums were due for principal and interest upon the said five mortgages, to wit:
To Mary Ann Dodin,.........$2,762 50
“ Owen Davey,.......... 221 00
“ Patrick C. Davey,........ 221 00
“ John Davey,.........442 00
“ John Callahan,.......... 271 50
Total,..........$3,918 00
Under and in pursuance of the judgment of foreclosure entered in said action on December 27, 1858, the premises were sold on February 18, 1859, and upon said sale knocked down to Frederick Johnson and Charles Gf. Cornell. The referee’s deed to said purchasers bears date March 22, 1859, and recites that the premises therein described had been ■struck off to said purchasers for the consideration of the sum of four thousand dollars, that being the highest sum bid for the same.
On December 14, 1859, Charles Gr. Cornell conveyed his interest in the premises to James D. MoMann, who, on November 27, 1861, again conveyed the same to the defendant, Catharine A. Cornell. In the action instituted by Mary Ann Dodin for the foreclosure of her mortgage, Thomas Reilly, Owen Davey, Patrick C. Davey, John Davey and John Callahan were made defendants, but Theodore T. Edgerton and Sibra Britton, the judgment creditors of Thomas Reilly, were not made parties.
The plaintiff in this action, David Winebrener, proved upon the trial that on or about December 7, 1860, the said judgment creditors issued an execution •upon their said judgment; that thereupon all the right title and interest which Thomas Reilly had in said premises at the time of the docketing of said judgment against him, or which he at any time thereafter acquired therein, was sold under said execution, and the *205 premises in question struck off to the plaintiff for the sum of two thousand and one dollars and forty-seven cents, that being the highest sum bid therefor ; that the sheriff executed and delivered to the plaintiff a certificate of sale therefor, bearing date February 5, 1861, and that, no redemption having been made, the sheriff conveyed the said premises to the plaintiff upon his bid, by deed dated May 6, 1862, and afterwards recorded on May 31, 1862.
There is no evidence before me that the confession of judgment by Thomas Reilly was made otherwise than for a debt honestly and fairly due and owing by him to Theodore T. Edgerton and Sibra Britton, nor did the defendants attempt to prove that such judgment has ever been paid. The defendants contend, however, that the ’ execution under which the plaintiff claims title, having been issued after the lapse of five years from tlie entry of the judgment without leave of the court, was null and void under the provision contained in section 284 of the Code, and that for this reason the plaintiff could not acquire any valid title under it.
The defendants .cite the case of Bates v. James (3 Duer, 45) in support of this proposition; but on examination of that case I find that the court did not pass upon the point whether the execution in that case was or was not a nullity, and further, that the execution therein named had issued to a constable, out of the marine court, after the lapse of five years, under subdivision 12 of section 64 of the Code, which is applicable to the marine court, but under which no execution could in any case be issued after the lapse of five years. Unless a transcript of a judgment recovered in the marine court has been docketed in the county clerk’s office, no execution whatever can issue upon such judgment after the lapse of five years from the entry of the judgment.
In Morse v. Goold (11 N. Y. [1 Kern.], 285) the execution was issued by a justice of the peace, and this case, therefore, does not apply.
But in the case of Bank of Genesee v. Spencer (18 N. *206 Y., 150) the court of appeals held that an execution issued without leave, after five years from the entry of the judgment, and in violation of section 284 of the Code, is not void, but only voidable in the discretion of the court from which it issued ; that under the former practice it was well settled that the execution, if issued too late, was not void (Woodcock v. Bennet, 1 Cow., 711); that it was liable to be set aside on motion, but that such motion, like all others, must be made promptly ; and that if it appeared that the defendant had consented to the execution being issued, or that there were any circumstances which in fairness and equity precluded him from availing himself of the irregularity, the motion would not prevail (Morris v. Jones, 2 Barn. & C., 232), and that there is no reason why the same practice should not obtain under the Code.
No motion having been made to set aside the execution complained of in this case, upon the ground of irregularity, it is too late now for the defendants to question its validity upon that ground, especially as they themselves, upon the trial, put in evidence an original execution issued by Edgerton and Britton upon the same judgment, bearing date of February 21, 1855, and indorsed by the sheriff as follows :
“26 Dec., ’55.
“No personal or real property.
“ John Obsek.”
But as the last mentioned execution, with said sheriff ’ s return indorsed thereon, was not filed in the office of the clerk of the city and county of New York until September 14, 1868, as appears from the indorsement of' the filing of the same, the question arises whether the execution bearing date of December 7, 1860, could be lawfully issued before the first execution had been returned to said clerk and placed on file in his office.
Previous to the revision of 1830, it was not necessary that a prior execution should be first returned, and *207 that the second or other execution should be connected with the first by a continuance upon the roll (1 Cow., 36, note a), and the same rule prevailed in other States (2 Serg. & R., 142, 156). According to the English practice, the execution must be returned in order to warrant the continuances (2 Wils., 82); but by the practice of the supreme court of New York no return was necessary (Jackson v. Stiles, 9 Johns., 391).
Under the Code, an execution is returnable within sixty days after its receipt by the officer, to the clerk with whom the record of judgment is filed, and leave to issue another execution after the lapse of five years, is not .necessary when execution has been issued on the judgment within five years, and returned unsatisfied in whole or in part. The omission of the sheriff in this case to file the execution, with his return indorsed thereon, within the proper time, is, in my judgment-, a mere irregularity, which cannot endanger the rights of the judgment creditors (Hall v. Ayer, 19 How. Pr., 91).
It follows, therefore, that inasmuch as the defendants cannot question the validity of the execution bearing date of December 7, 1860, upon the ground that it was issued after the lapse of five years from the entry of judgment, they cannot impair its validity by proof introduced by themselves that another execution had been issued within the five years, that the sheriff had been unable to collect the amount of the same, and had made his certificate to this effect, but had neglected to file the said execution, with his return indorsed thereon, in the proper office within the proper time.
The five mortgages hereinbefore referred to, being so- • called purchase money mortgages, and as such, in accord- ■ anee with the provision of the statute in such case made and provided, liens prior to the lien of the judgment held by Theodore T. Edgerton and Si bra Britton, and the said judgment creditors not having been made parties to the action, by which the said mortgages were foreclosed, the foreclosure as to them was utterly void (Brainard v. Cooper, 10 N. Y. [6 Seld.], 356). The said judgment creditors *208 therefore would have had a right to redeem the premises from the purchasers at the sale, under the judgment of' foreclosure, even though they had not made their lien specific by an execution and sale upon their judgment (Brainard v. Cooper, 6 Seld., 356; 3 Johns. Ch., 460 ; 2 Story's Eq. Jur., § 1023; 4 Kent Com., 162). And the said foreclosure being, under the decision of the court of appeals, utterly void as to said judgment creditors, it necessarily follows that they had a right to issue execution and sell the premises under it, in the same manner as if no foreclosure of said mortgages had ever' taken place ; and it further follows, that the purchaser at said sale, upon receiving his deed from the sheriff, acquired good title to the extent of the-right, title and interest of the judgment debtor in said premises, at the time of the docketing of the judgment against him, or which he at any time thereafter acquired therein.
The plaintiff in this action, therefore, on receipt of the •sheriff’s deed, acquired all the right, title and interest of Thomas Reilly, as the owner of the fee, subject to the lien of the five purchase money mortgages hereinbefore referred to.
On the other hand, while Frederick Johnson and Charles Gr. Cornell, as the purchasers under the foreclosure, obtained, as against the mortgagor Thomas Reilly and all other parties to the suit, the title in fee to the mortgaged premises, subject to the lien of the judgment held by Theodore T. Edgerton and Sibra Britton, they and their subsequent grantees, as against said judgment creditors and the plaintiff deriving title through them, hold the said premises only as security for the amount represented by the said five mortgages, &c., &c. The defendant, Catharine A. Cornell, could acquire no greater right than her husband Charles Gr. Cornell possessed in the premises, and she must be deemed to have contracted to stand in his place (2 Barb. Ch. Pr., 197). The plaintiff, therefore, might well insist upon his right to redeem. He swears in his deposition that he authorized a tender to be made to the defendants for the pur *209 pose of paying off the amount due to them, with expenses, interest, &c., &e., and proves, by the oath of Theodore T. Edgerton, that a tender of some five thousand six hundred dollars was made by the latter, on behalf of the plaintiff, in the year 1862, and a quit-claim deed presented to both defendants for execution, but that the defendants declined to accept the money tendered, and to execute the said deed. The testimony of this witness as to the tender made by him to the defen- ' dant Johnson, on the 26th day of May, 1862, is corroborated by another witness, Joseph Stockbridge, a merchant, who swears that he went with Theodore T. Edgerton for that purpose ; and the latter’s testimony, as to the tender made by him to Mrs. Cornell about eight or ten days later, is corroborated by his brother, Tracy Edgerton, who swears he went along on that occasion, and put his initials on the deed which Theodore T. Edgerton requested Mrs. Cornell to sign.
Upon these points, the testimony of the plaintiff’s witnesses is clear. And although their recollection of some collateral facts is not very distinct, although both defendants swear that no such tender was ever made, I do not see how I can disregard the testimony of the plaintiff’s witnesses. Their general character has not been impeached ; no attempt was made even in this direction. It is not astonishing to find that after the lapse of seven years, they cannot recollect everything precisely as it transpired; on the contrary, it would afford ground for„surprise if they had testified .precisely alike upon all collateral points. At the same time I am fully satisfied that the defendants testified only to what they conscientiously believed to be the truth ; but I am inclined to think that they have forgotten the occurrences testified to by the plaintiff’s witnesses. The premises in question have formed for years the subject of so many suits and. negotiations, to which the defendants were parties, that it may very easily have happened that the defendants at the time attached no importance *210 whatever to the call of Mr. Theodore T. Edgerton, and soon forgot all about it.
At any rate, as upon this point the plaintiff’s witnesses cannot be mistaken, and I am convinced that all witnesses and parties upon the trial of this case have testified as truthfully as their best recollection permitted,
I am bound to give effect to the testimony of the witnesses of the plaintiff, in accordance with the general rule applicable in such cases. But even if no tender had been proven, the plaintiff’s right to redeem would still remain.
I also cannot see how the fact that the heirs of Thomas Reilly, who died September 1, 1863, did, on the first day of May, 1868, deliver the possession of the premises to the plaintiff, can deprive the plaintiff of his right to redeem, nor how the plaintiff’s case could be prejudiced by the omission of Theodore T. Edgerton, ,as the agent of the plaintiff, to pay all the rents collected 'by him since May 1, 1868, over to the plaintiff. In ■the same manner, any promise which the plaintiff or Theodore T. Edgerton may have made to any member -of the Reilly family, to the effect that said family, or any member thereof, should ultimately again derive some benefit from said premises, after the redemption thereof -by the plaintiff, could not, even if proved, debar the plaintiff from asserting his rights. But no such proof ■was given.
The defendant, Frederick Johnson, admitted in his •testimony, that he had been in possession of the premises, and received the rents and profits thereof, jointly with Charles Gr. Cornell, from the time of their joint purchase to the time the said Charles Gr. Cornell conveyed his interest to James D. McMann, and from that .time jointly with said McMann, until the latter conveyed ‘ .to Mrs. Cornell, and from that time, to wit, the 27th day | • of November, 1861, jointly with Mrs. Cornell, until the ¡ first day of May, 1868. As James D. McMann and '.Charles G. Cornell have not been made parties defendants in this action, and therefore cannot be called upon *211 to account, the plaintiff is entitled to judgment as follows :
1. That the lien of the defendants under and by the said five mortgages so foreclosed as aforesaid, was discharged by the tender made as aforesaid, and that the plaintiff is entitled to redeem.
2. That the defendants account to and with the plaintiff, under the direction of this court, for the moneys, rents and profits received by them from the twenty-seventh day of November, 1861, to the first day of May, 1868 ; and that, from the said moneys, rents and profits, sufficient to discharge the amount which but for said judgment of foreclosure would be due and owing upon said five m< rtgages hereinbefore referred to, together with interest.thereon, be applied in discharge of the same; that the defendants, in addition thereto, be allowed all payments made by them within said period for taxes, assessments, insurance and reasonable repairs and permanent improvements upon said premises, and also the costs of said foreclosure suit, and that thereupon the said mortgages be declared satisfied, and that the defendants be compelled to execute a release of their respective interests in and to said premises in due and proper form, and to pay over to the plaintiff any balance of the moneys remaining in their hands.
8. That if, upon such accounting, it should be found that there still remains anything due and owing upon said mortgages to the defendants, or for taxes, assessments, insurance, and reasonable repairs and permanent improvements upon said premises as aforesaid, the sum so remaining due and owing be declared and fixed, and that the plaintiff may pay the same, and that-thereupon the said mortgages be declared redeemed and satisfied, and the defendants be compelled to execute to the plaintiff a release in due and proper form for said premises.
The defendants, having resisted the plaintiff’s claim not only upon points of law, which wholly failed, but also upon the facts, cannot have costs in this action.